IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES B. GILL, SR.,

                Plaintiff,              OPINION AND ORDER

v.

                                            23-cv-739-wmc

SCOTT MILLER,

                Defendant.

---

State prisoner Charles Gill, Sr., representing himself, claims that Scott Miller, the Food Service Administrator at Stanley Correctional Institution ("Stanley"), violated his constitutional rights by promoting white and Latino inmates over him, then retaliating when he complained about it. The parties' cross-motions for summary judgment are before the court. (Dkt. #18 and Dkt. #33.) For the reasons explained below, defendant's motion will be granted and plaintiff's motion will be denied.

UNDISPUTED FACTS[1]

Plaintiff Charles Gill, Sr., who is Black, is a prisoner at Oshkosh Correctional Institution, but at all times relevant to this case, he was incarcerated at Stanley. Defendant Scott Miller is the Food Service Administrator at Stanley and responsible for, among other things, coordinating and managing kitchen staff, including inmate supervisors known as Correctional Food Service Leaders ("CFSLs"). However, Miller was not involved in the

---

[1] Unless otherwise indicated, the following facts are undisputed and drawn from the parties' proposed findings of facts and responses, as well as the undisputed record evidence, where appropriate.

hiring process for inmate staff. Rather, staffing changes were handled by the senior CFSLs themselves, as well as the Food Service Manager.

Specifically, CFSLs determine what job openings to post within the Food Service Department, review the employment record of applicants, and select candidates to fill the vacant positions. New hires and changes in work assignments, including promotions, were also authorized by the CFSLs, then approved by the Food Service Manager. When jobs became available within the Food Service Department, a job posting sheet was hung up in the kitchen break room where current employees could apply. Job postings contained various information, including job title, shift hours, days off, pay rate, the name of the inmate being replaced, and the date that the posting will be taken down. Inmates who did not already work within the Food Service Department could also submit an interview/information request, along with an application, to express interest in an entry-level position. Employment opportunities, including promotions, were supposed to be merit-based and given to the most qualified candidate, rather than based on seniority.

Gill first applied to work in Stanley's kitchen on April 7, 2023. He was hired as an Assistant Cook and began working on April 16, 2023. One week later, Gill applied for a promotion to a vacant, Cook II position and was selected for the position over another applicant. He began that role on April 30, 2023. When Gill was promoted to Cook II, another inmate, W.B., filled the empty Assistant Cook position. The Assistant Cook position was a Food Service Worker ("FSW") level 3 position on the FSW pay scale, which ranges from FSW-1 to FSW-5, with 5 being the highest pay available payrate. The payrate for Gill's new Cook II position was FSW-4, the second highest level on the FSW scale.

2

In both the Assistant Cook and Cook II positions, Gill worked primarily in the food prep area of the kitchen. As a Cook II, Gill was essentially the "lead prep cook," and he did no actual cooking. However, Gill wanted to move to the cooking area of the kitchen, so in June 2023, when an opening for another Cook II position opened in the cooking area at the same FSW-4 payrate, Gill applied. Five inmates total applied for the job opening, including Gill, and inmate W.B. W.B. was promoted from Assistant Cook to the vacant Cook II position, with another inmate, S.D., backfilling W.B.'s former position as Assistant Cook.

On August 28, 2023, another job opening for a Cook II position in the cooking area, again with an FSW-4 payrate, was posted. This time, three inmates applied for the job opening, including Gill. The parties dispute whether Food Service Administrator Miller was involved in filling this Cook II position. According to Gill, he heard Miller tell a CFSL on September 1, 2023, to promote inmate S.D. to the Cook II position. Miller denies being involved in this hiring decision at all. Ultimately, inmate S.D. was promoted from Assistant Cook to the vacant Cook II position and began his new role on September 3, 2023. S.D.'s Assistant Cook position was filled by yet another inmate, A.S-R., who had been working in an entry-level kitchen position.

Meanwhile, just three days after this second Cook II position in the cooking area was posted, and before it was filled by S.D., Miller walked into the breakroom to find Gill holding his arm and appearing to be in pain. After Miller asked what happened, Gill responded that he had been injured in the kitchen, and Miller sent Gill to the Health Services Unit for assessment. According to Miller, he then reviewed security camera

footage from the kitchens, which showed that Gill had spilled a large bowl of tuna salad onto the floor, punched a wall, and then laid down on the floor pretending to be injured until a correctional officer entered the kitchen. After reviewing that footage, Miller gave Gill a conduct report for disruptive conduct, lying, and inadequate work performance. (Dkt. #34-5.) For his part, Gill denies lying and maintains that his injury was legitimate. Gill was apparently found not guilty of the conduct report, although Miller provides no explanation for this outcome, nor did either party file the security footage with the court.

On the same morning that Miller issued the conduct report, Gill sent Miller an email asking him to "please explain why I have been skipped again for a promotion. This is the second time and I feel disrespected and discriminated against. I have the seniority and will be taking this federal." (Dkt. #34-6.) From the record, whether Miller received Gill's email before or after he issued the conduct report is unclear. In any event, Miller responded to Gill some five days later, on September 5, that: "When there is an opportunity for promotion it is not seniority based, it is merit based." (*Id.*)

Approximately six weeks later, on October 15, 2023, another job opening for a Cook II position with an FSW-4 payrate was posted. Three inmates again applied for this job opening, including Gill. However, inmate A.S-R. was promoted from Assistant Cook to the vacant Cook II position.

Finally, on November 8, 2023, another job opening for a Cook II position in the cooking area was posted. Four inmates applied for this job opening, including Gill, who was transferred from his current Cook II position to this new Cook II position and began working in the cooking area on November 26, 2023.

4

OPINION

Plaintiff claims that defendant violated his rights by: (1) promoting two, less experienced white cooks and one Latino cook before promoting him in violation of the Fourteenth Amendment's Equal Protection Clause; and (2) issuing him a false conduct report in retaliation for threatening a lawsuit in violation of the First Amendment. Since the parties filed cross-motions for summary judgment on both claims, the court views disputed facts in a light most favorable to the nonmoving party, and construes all reasonable inferences from the evidence in his favor, *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017), but a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). Moreover, facts need only be taken in the light most favorable to the nonmoving party where there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In the end, summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009).

5

I. **Equal Protection**

Plaintiff claims that defendant violated his Fourteenth Amendment right to equal protection by promoting two white cooks and one Latino cook, each of whom had less seniority than he. To succeed on a claim for race discrimination under the Equal Protection Clause, however, plaintiff must show that defendant treated him less favorably *because* of his race. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013); *Antonelli v. Sheehan*, 81 F.3d 1422, 1433 (7th Cir. 1996). Plaintiff cannot succeed on this claim for at least three reasons.

*First*, plaintiff has failed to show that *defendant Miller* was involved in any way in the hiring decisions about which he now complains. Indeed, in his response brief, plaintiff concedes that he has *no* evidence that defendant was involved in filling either of the June or October, 2023, Cook II positions. (Plt. Reply (dkt. #39) 2.) Thus, plaintiff's equal protection claims relating to those two positions fail as a matter of law, since defendant can be liable only if he was personally involved in the alleged constitutional violation. *See Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) ("For constitutional violations under § 1983, a government official is only liable for his or her own misconduct. … [An official] is therefore liable only if []he was personally involved in the constitutional violation.")

As for the remaining September 2023 position, plaintiff asserts that he personally witnessed defendant tell an inmate CSFL not to hire plaintiff sometime between 8:30 and 9:30 a.m. on September 1, 2023. (Plt.'s Decl. (dkt. #40) ¶ 9.) To begin, this assertion is suspect for multiple reasons, including that it appears to contradict his assertion that the hiring decision for the Cook II position already had been made *before* Miller allegedly

6

instructed a CSFL not to hire plaintiff. (*Id.* ¶ 9) ("I noted that I was skipped again for a promotion . . . I went to defendant Miller and complained about getting skipped a second time for the cooks position on the kettles. While standing there, Food Service worker Christopher Gates was directed by Scott Miller to give the promotion to inmate Deibert instead of me.") Plaintiff does not explain why defendant would instruct a CSFL not to hire plaintiff *after* the hiring decision had been made, nor why the instruction would be material at that point.

In addition, there is no dispute that plaintiff emailed defendant at 9:18 a.m. that same day, September 1, 2023, asking why he had not been promoted. Plaintiff does not explain why he would have sent this email if he had just asked defendant *in person* why he had not been hired. Regardless, on this record, no reasonable jury could believe plaintiff's assertion that defendant Miller was responsible for filling the Cook II position in September 2023. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

*Second*, even if a jury could reasonably conclude that defendant was involved in the September 2023 hiring decision, plaintiff has failed to show that he suffered an action sufficiently adverse to support a constitutional claim. Contrary to the allegations in his complaint, the record shows that plaintiff was never denied a *promotion*. Rather, on three occasions he was denied a transfer to a different Cook II position *at the same title and payrate*, as the position he was in already, albeit with different tasks. At least alone, plaintiff's

7

personal preference to work in a different area of the kitchen does not amount to an adverse action, and permitting him to maintain a constitutional claim under the circumstances would result in excessive federal court involvement in prison operations. *Cf. Sandin v. Conner*, 515 U.S. 472, 473 (1995) (disapproving of "involvement of federal courts in the day-to-day management of prisons").

*Third*, and equally dispositive, plaintiff offers *no* evidence from which a reasonable jury could find that his transfer denials were motivated by race. To avoid summary judgment, plaintiff must show that defendant acted with a discriminatory purpose. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). Plaintiff's only argument appears to be that less experienced inmates were promoted ahead of him, although he offers no evidence to support his suggestion that he was the better qualified employee under a merit-based promotion system. Indeed, the record does not support plaintiff's assertion. No inmate with less experience was promoted ahead of plaintiff. Rather, each of the inmates moving into the Cook II positions that plaintiff desired followed the *very same* promotion path as plaintiff: moving from Assistant Cook to Cook II.

In short, plaintiff has offered no evidence to support his assertion that defendant denied any promotion (or transfer) requests because of his race. Accordingly, defendant is entitled to summary judgment on plaintiff's equal protection claim.

## II. First Amendment Retaliation

Plaintiff also contends that defendant issued him a conduct report in retaliation for his threatening to sue about being denied the September 2023, promotion. "An act taken

in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To win on this claim, however, plaintiff would need to show that after engaging in constitutionally protected speech, he was subjected to a deprivation that likely would deter future speech, and that the deprivation was at least partially motivated by his protected speech. *Novoselsky v. Brown*, 822 F.3d 342, 354 (7th Cir. 2016); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Defendant again argues that plaintiff's retaliation claim fails for multiple reasons. *First*, he argues that plaintiff's email threat to defendant on September 1, 2023, that he would be "taking this federal" was not a constitutionally protected activity. Moreover, defendant is correct that the Seventh Circuit has yet to decide whether *threatening* to file a lawsuit is an activity protected by the First Amendment. *See Reed v. Bowen*, 769 F. App'x 365, 370 (7th Cir. 2019) ("We have not ruled that threatening to file a lawsuit is protected activity."); *see also Davenport v. Szczepanski*, 704 F. App'x 602, 603 (7th Cir. 2017) ("merely *threatening* to file a grievance against someone is not protected activity") (citing *Bridges*, 557 F.3d at 554 ("it seems implausible that a threat to file a grievance would itself constitute a First Amendment-protected grievance" (emphasis in original)). *Cf. Herron v. Meyer*, 820 F.3d 860, 864 (7th Cir. 2016) (questioning whether the First Amendment protects a prisoner's personal, workplace grievances).

Because it is not clearly established that plaintiff's speech was constitutionally protected, defendant would at the very least be protected by the doctrine of qualified immunity from plaintiff's claim for damages. Under that doctrine, a plaintiff may not

9

obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). Plaintiff bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity, *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011), and he has failed to cite any authority clearly establishing that a vague threat to file a lawsuit is First Amendment-protected activity, especially where again there was no impact on plaintiff's title or pay rate. *See Childs v. Rudolph*, No. 22-CV-572-JDP, 2024 WL 639859, at *3 (W.D. Wis. Feb. 15, 2024) (defendant entitled to qualified immunity on First Amendment retaliation claim because not clearly established that a threat to file a lawsuit or grievance was protected activity).

*Second*, even if plaintiff's email was constitutionally protected, he has failed to show that a single, dismissed conduct report was a constitutionally-sufficient deterrent.[2] Rather, Seventh Circuit case law establishes that "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, 557 F.3d at 555. Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim as well.

---

[2] Plaintiff argues in his response brief that even if the conduct report itself was not sufficient deterrent under the First Amendment, his suspension from work pending the outcome of the conduct report would be sufficient to deter an ordinary inmate from engaging in protected activity. (Plt.'s Br. (dkt. #39) 7–8.) However, plaintiff raised this argument for the first time in his summary judgment response brief, and it is too late to amend his claims at this stage because defendant has had no opportunity to investigate plaintiff's alleged suspension. Moreover, plaintiff produced no evidence or argument about who imposed the suspension or why, so there is no basis on which the court could conclude that *defendant* was responsible for the suspension.

ORDER

IT IS ORDERED that:

1) Plaintiff Charles Gill, Sr.'s motion for summary judgment (dkt. #18) is DENIED.

2) Defendant Scott Miller's motion for summary judgment (dkt. #33) is GRANTED.

3) The clerk of court is directed to enter judgment and close this case.

Entered this 26th day of January, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge